IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RIDDELL, INC. and BELL SPORTS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CERTOR SPORTS, LLC,<br><br>Defendant;<br><br>CERTOR SPORTS, LLC and THE UNIVERSITY OF WASHINGTON,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>RIDDELL, INC.,<br><br>Counterclaim-Defendant. | Civil Action No. 25-323-CFC |

**MEMORANDUM ORDER**

Pending before me is the construction of the term "inner liner" in claims 1 and 11 of U.S. Patent No. 12,213,552 (the #552 patent). Counterclaim-Plaintiffs Certor Sports, LLC and the University of Washington (collectively, Certor) have asserted the #552 patent against Counterclaim-Defendant Riddell, Inc. (Riddell). I

heard oral argument on the term on July 30, 2026 and later ordered the parties to respond in writing to six additional questions. *See* D.I. 90; 8.7.26 Oral Order. Having now had the benefit of full briefing, oral argument, and the parties' supplemental responses, I will construe the term as follows.

Claim 1 of the #552 patent reads:

> A helmet assembly customizable to a topography of a player's head, the helmet assembly comprising:
>
> a helmet shell comprising:
>
> > an inner surface;
> >
> > an outer surface; and
> >
> > one or more functional openings from the inner surface to the outer surface through the helmet shell;
>
> an inner liner configured to be positioned within the helmet shell, the inner liner selected from a set of predetermined inner liners having different sizes;
>
> a plurality of pads configured to be coupled to the inner liner, the plurality of pads selected from a set of pads having predetermined sizes, the plurality of pads selected to accommodate the topography of the player's head within the helmet shell; and
>
> a sensor configured to collect data related to use of the helmet assembly, including at least one of speed, direction, and magnitude of impact experienced by the player while wearing the helmet assembly.

#552 patent at claim 1. And claim 11 of the #552 patent reads:

> A customizable helmet assembly for use by a player, comprising:
>
> a helmet shell comprising an inner surface and an outer surface, the helmet shell defining a frontal opening configured to be positioned over a face of the player, and at least a portion of the helmet shell configured to be flexible;
>
> an inner liner configured to be positioned within the helmet shell;
>
> a plurality of pads configured to be coupled to the inner liner, the plurality of pads selected from a set of pads having predetermined sizes, the plurality of pads selected to accommodate the actual size or shape of the player's head; and
>
> a facemask cage configured to be coupled to the helmet shell, the facemask cage comprising:
>
> > at least three horizontal bars configured to extend horizontally across the frontal opening in the helmet shell, and
> >
> > one or more vertical bars extending between the at least three horizontal bars;
>
> wherein the helmet shell comprises one or more functional openings through the helmet shell.

#552 patent at claim 11.

Certor proposes that I give the term "inner liner" its plain and ordinary meaning, i.e., "inner layer of material, pads, or other impact absorbing elements." D.I. 95 at 6; D.I. 78 at 67. Riddell proposes that I construe the term to mean "inner layer, shell, or cap positioned between the outer helmet shell and the plurality of

pads having predetermined sizes." D.I. 98 at 4; D.I. 78 at 67. In other words, Riddell argues that the term requires the claimed liner be in a certain position relative to other helmet components, whereas Certor argues that it does not.

The written description does not discuss the term "inner liner," but the parties agree that the written description does refer to a "liner," "inner layer or cap 60," and "inner shell or cap 60." D.I. 98 at 1 (citing #552 patent at 7:30, 7:45–46, 15:5); D.I. 95 at 2 (citing #552 patent at 7:30, 19:13–14). Certor argues, however, that the "energy absorbing impact layer 50" may *also* be the claimed liner (i.e., that the "inner liner" may be *either* the "energy absorbing impact layer 50" *or* the "inner layer[,] [shell,] or cap 60"). *See, e.g.*, D.I. 95 at 2–3 (citing #552 patent at 7:28–35). Riddell takes the position that the "energy absorbing impact layer 50" is *not* the claimed liner. D.I. 98 at 2; D.I. 78 at 77. I agree with Riddell.

The written description repeatedly distinguishes between the "energy absorbing impact layer 50" and the "inner layer[,] [shell,] or cap 60." For example, in one sentence to which both parties cite, the patent explains: "As best seen in FIGS. 2A through 2I, 3A through 3F and 4, the helmet can further include an energy absorbing impact layer 50 (FIGS. 2A through 2I), an inner layer or cap 60 (FIGS. 3A through 3F) and comfort or fitting pods 70 (FIG. 4)." #552 patent at 7:28–32. The "energy absorbing impact layer 50" and "inner layer or cap 60" are two distinct components. Later in column 7 (in another sentence to which Certor

cites), the written description contrasts the two components, further demonstrating that the components are different: "In some embodiments, the inner layer can be at least five times to one-hundred times more rigid than . . . various components of the impact mitigation layer [i.e., the energy absorbing impact layer]." #552 patent at 7:55–58. A component cannot be five times more rigid than itself. And finally, the written description also discusses (again, in a sentence Certor cites) attaching the energy absorbing impact layer to the inner shell: "In one exemplary embodiment, shown in FIG. 8E, the various modular components of the energy absorbing impact layer can be attached to the inner shell[.]" #552 patent at 13:28–30. This sentence does not contemplate attaching a component to itself. And neither party suggests that the "inner liner" may be comprised of several layers, liners, shells, or caps. This evidence suggests that the energy absorbing impact layer 50 is a different component than the inner layer, shell, or cap 60 and thus not the claimed inner liner.

The written description explains that the two components have different functions as well. The function of the energy absorbing impact layer 50—to state the obvious—is to absorb energy and mitigate the impact of forces on a player's head. Although the inner layer, shell, or cap 60 may also serve an impact-mitigation function by "preventing projectiles or intense impacts from fracturing the skull or creating hematomas," *see* #552 patent at 7:53–55, the claims require

that the inner layer, shell, or cap also accommodate the size of the player's head—alone and in conjunction with "a plurality of pads," *see* #552 patent at claim 1 (36:23–29); 15:5–9 ("The inner shell or inner layer 60 can substantially surround the head of the wearer and, in conjunction with various fitting pods, desirably conforms to the shape of a wearer's head."). Specifically, "the inner liner [must be] selected from a set of predetermined inner liners having different sizes" and coupled to a "plurality of pads selected from a set of pads having predetermined sizes, the plurality of pads selected to accommodate the topography of the player's head within the helmet shell." #552 patent at claim 1 (36:23–29); *see also* #552 patent at claim 11 (37:6–10). "Inner liner" thus refers only to the inner layer, shell, or cap 60, *not* the energy absorbing impact layer 50.

Having concluded that "inner liner" does not include the energy absorbing impact layer 50, it follows that the inner liner must be between the outer shell and the plurality of pads. It is undisputed that the inner liner always is—and must be—within the outer helmet shell. *See* D.I. 78 at 70; 7.30.26 Markman Hr'g Tr. (docketed as D.I. 91) 270:6–8, 270:12–13. The question, then, is whether the plurality of pads must be *within* the inner liner (as opposed to *outside* it, between the outer shell and the inner liner). As far as I can tell, the #552 patent *only* discloses the plurality of pads within the inner liner. *See, e.g.*, #552 patent at 16:43–45, 18:8–11, Fig. 10. (And Riddell has repeatedly represented as much.

*See, e.g.*, D.I. 78 at 70, 77; D.I. 98 at 1; 7.30 Tr. 274:4–16, 282:22–24.) It makes sense. The claims are directed to a "customizable" helmet in which a "plurality of pads [is] selected from a set of pads having predetermined sizes, . . . to accommodate the topography of the player's head within the helmet shell." #552 patent at claim 1 (36:15, 36:26–29); *see also* #552 patent at 16:43–57. As Riddell's counsel explained at oral argument, a helmet manufacturer would "los[e] all utility" of the pads if it put the pads—selected to accommodate the size of the player's head—anywhere *other than* against the player's head and within the inner liner. *See* 7.30 Tr. 273:13–274:9. Any customization would be lost if the customized component is within a generic component.

The only competent evidence that Certor cites in support of its argument to the contrary relies on the energy absorbing impact layer 50. *See* D.I. 78 at 74; 7.30 Tr. 271:19–272:12, 280:18–22, 282:6–15, 283:16–18. Certor's counsel argued at the hearing that I would exclude an embodiment if I adopted Riddell's proposal, but that argument rested on the false premise that the energy absorbing impact layer 50 is the "inner liner." *See* 7.30 Tr. 271:19–272:12, 280:18–22, 282:6–15, 283:16–18 (citing #552 patent at 4:55–64, 27:34–44) (referring to "[t]he impact mitigation layer"). Because it is not, Riddell's proposal does not exclude any embodiments.

Certor also suggests that I must find disavowal to adopt Riddell's proposal. *See* D.I. 78 at 68; 7.30 Tr. 280:22–25. I disagree. "[W]hen the scope of the invention is clearly stated in the specification, and is described as the advantage and distinction of the invention, it is not necessary to disavow explicitly a different scope." *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1340 (Fed. Cir. 2006). "[T]he claims cannot be of broader scope than the invention that is set forth in the specification." *Id.* "The importance of the specification in claim construction derives from its statutory role." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc). "In light of the statutory directive that the inventor provide a 'full' and 'exact' description of the claimed invention, the specification necessarily informs the proper construction of the claims." *Id.* (quoting 35 U.S.C. § 112).

NOW THEREFORE, at Wilmington this Eighth Day of September in 2026, it is HEREBY ORDERED that the Court adopts the following construction with

respect to the asserted claims of U.S. Patent No. 12,213,552:

| Term | Construction |
|---|---|
| "inner liner" (claims 1 and 11) | "inner layer, shell, or cap positioned between the outer helmet shell and the plurality of pads having predetermined sizes" |

CHIEF JUDGE